UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| BILLIE JEAN REAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:16-CV-02-HAI |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, ) | **&** |
| *Acting Commissioner of Social Security*, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

On December 12, 2012, Plaintiff Billie Jean Reavis protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI"). D.E. 13-1 at 16. She dates the beginning of her disability period to April 1, 2011. *Id*. Reavis claims she is disabled due to a variety of conditions including anxiety, depression, irritable bowel syndrome, fibromyalgia, joint pain, severe headaches, and clinical peripheral neuropathy.[1] D.E. 17-1 at 2-3. The Social Security Administration denied Reavis's claims initially on January 18, 2013, and upon reconsideration on April 17, 2013. D.E. 13-1 at 16. Following this denial, upon Reavis's request, Administrative Law Judge ("ALJ") Theresa Merrill conducted an administrative hearing. *Id*. The ALJ heard testimony from Reavis and impartial vocational expert ("VE") James H. Miller. *Id*.

Reavis was forty-eight years old on the alleged onset date. *Id*. at 216. She has an eighth-grade education and earned her GED. *Id*. at 36. Reavis has no relevant past work experience. *Id*.

---

[1] The Plaintiff claims many impairments, see Memorandum in Support of Plaintiff's Motion for Summary Judgment, D.E. 17-1 at 2-3, for a complete list.

at 48.  Although the ALJ found Reavis had no relevant past work experience, the ALJ did find that she had the residual functional capacity (RFC) "to perform [some] medium work" with restrictions on squatting, crawling, kneeling and climbing stairs or ramps and is limited to jobs requiring "no more than a 5th or 6th grade reading level." *Id*. at 22.  The ALJ further found that there are "jobs that exist in significant numbers in the national economy that claimant can perform." *Id.* at 24.  Accordingly, the ALJ found that Reavis was "not disabled." *Id*. at 25.

Reavis now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits.  Both parties consented to the referral of this matter to a magistrate judge.  D.E. 9 & 10.  Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  D.E. 11.  The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 17) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 18).

## I. OVERVIEW

Under 20 C.F.R. §§ 404.1520 and  416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2]  The ALJ followed this procedure in this case.  *See* D.E. 13-1 at 18-24.

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b).  In this case, the ALJ found that Reavis "has not engaged in substantial gainful activity" since the "alleged onset date."  D.E. 13-1 at 18.

At the second step, if a claimaint does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  § 404.1520(c).  The ALJ found that Reavis did suffer the "combined 'severe' impairments of osteoarthritis and major joint dysfunction."  *Id*.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled.  20 C.F.R. § 404.1520(d).  The ALJ found that Reavis failed to meet this standard.  *Id*. at 22.  Reavis argues that the ALJ erred at this step.  D.E. 17-1 at 2.

First, considering Plaintiff's allegation that she suffers from fibromyalgia, the ALJ applied Social Security Ruling 12-2P to determine whether Reavis had the impairment of fibromyalgia. Under these parameters, the ALJ found that the record did not support this diagnosis.  D.E. 13-1 at 19.  The ALJ relied on Reavis's treatment records from Dr. Jerry Woolum, primary care physician.  *Id*.  The ALJ considered notes from Dr. Woolum reflecting an "isolated generalized assessment" of fibromyalgia, but found that the record of treatment failed to establish fibromyalgia as a medically determinable impairment.  *Id*.

The ALJ also considered an independent examination conducted by Dr. Robert Hoskins who noted in his October 2013 assessment that Reavis presented with "14 of 18 [tender] fibromyalgia locations."  *Id*.  Although the ALJ acknowledged this examination, she ultimately found that the record was silent as to "findings of the requisite tender points located bilaterally

3

both above and below the waist as well as documentation that digital palpitation was performed with appropriate force . . . and that other disorders . . . were excluded." *Id*. The ALJ further noted that there was no evidence of "specialist treatment with a rheumatologist[,] pain management or physical therapy treatment related to fibromyalgia." *Id.*

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's RFC, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). The ALJ determined that Plaintiff had the RFC to "perform medium work. . .except that she can perform no more than frequent stooping, crouching or climbing of ramps and stairs; no more than occasional kneeling and crawling; no climbing of ladders, ropes, and scaffolds; and no more than a 5th to 6th grade reading level." D.E. 13-1 at 22. Reavis claims this calculation does not reflect her disability.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of her residual functioning capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Reavis had no previous relevant work. D.E. 13-1 at 24.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Reavis was not disabled at this step. D.E. 13-1 at 25. The ALJ explained that she asked the VE at the hearing

> whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as food preparation worker. . .childcare worker. . .and dishwasher.

4

*Id*. at 24. The ALJ concluded that, based on the VE's testimony, and "considering the claimant's age, education, work experience, and residual functioning capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 25. Reavis was therefore "not disabled." *Id*.

Accordingly, on July 2, 2014, the ALJ issued an unfavorable decision, finding that Reavis was not disabled, and thus was ineligible for disability insurance benefits and SSI. *Id*. The Appeals Council declined to review the ALJ's decision on November 20, 2015. *Id*. at 2.

## II. DISCUSSION

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo*

review, resolve conflicts in evidence, or make credibility determinations. *Cutlip*, 25 F.3d at 286 (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### III. ANALYSIS

Plaintiff Reavis advances two arguments on appeal. First, Plaintiff asserts that the ALJ incorrectly found under Social Security Ruling ("SSR") 12-2p[3] that she does not suffer from the severe impairment of fibromyalgia, and therefore, erred in calculating her RFC. Second, Plaintiff alleges that the ALJ's determination that she is not disabled is not supported by substantial evidence. Each argument will be addressed in turn.

**1. The ALJ properly applied SSR 12-2P and did not err in finding that Plaintiff's alleged fibromyalgia was not a severe impairment.**

Reavis's first argument on appeal is that the ALJ erred by failing to find that she suffers from the severe impairment of fibromyalgia. D.E. 17-1 at 10. Specifically, she argues that the ALJ erred in applying SSR 12-2p to her case, erroneously discounted the opinions of her treating physicians and her complaints of pain in the record, and failed to request additional medical records on her diagnosis of fibromyalgia. The ALJ noted that, while there was an "isolated generalized assessment of fibromyalgia" in primary care notes and references to 14 of the 18 fibromyalgia

---

[3] SSR 12-2P provides "guidance on how [to] develope evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia" and how a disability claim involving fibromyalgia should be evaluated. SSR 12-2p, 2012 SSR LEXIS 1 (July 25, 2012).

6

tender points by an independent examiner, the overall record failed to establish the findings necessary to support a diagnosis of fibromyalgia as required under SSR 12-2p. D.E. 13-1 at 19.

The Commissioner possesses the responsibility to determine a claimant's residual functional capacity based on medical evidence, non-medical evidence, and the claimant's credibility. 20 C.F.R. §§ 404.1527(d)(2), 404.1545; SSR 96-8p, 1996 WL 374184, at *5. In making such a determination, the ALJ must resolve conflicts in the evidence and incorporate only those limitations that she finds credible in the residual functional capacity calculation. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)(*quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). Furthermore, the claimant bears the burden of showing that her impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.,* 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone*, 507 F. App'x at 472 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)) (emphasis in original).

In the instant case, Plaintiff claims that the ALJ erred in finding that her fibromyalgia was not a severe impairment. The Sixth Circuit has recognized that fibromyalgia can be a severe impairment, but unlike other medical conditions that can be confirmed by objective testing, patients with fibromyalgia present no "objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)(citing *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998)). "The process of diagnosing fibromyalgia includes (1) the testing of a series of a focal points for tenderness and (2) the ruling out of other possible conditions through

7

objective medical and clinical trials." *Rogers,* 486 F.3d at 244. While "[a] person with a condition of fibromyalgia [could] have serious enough pain to have a disability under the Social Security Act, [] the condition does not automatically qualify as a listing level impairment." *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir. 2003). "Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [claimant] is one of the minority." *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996).

The test enunciated above for diagnosing fibromyalgia is laid out in SSR 12-2p, which requires medical evidence to establish a true diagnosis. SSR 12-2p, at *3. Fibromyalgia will be diagnosed as a medically determinable impairment if certain criteria are met, and the physician's diagnosis is otherwise consistent with the case record. *Id*. at *4. Fibromyalgia can be established if a claimant has all three of the following: (1) a history of pain in all quadrants of the body and axial skeletal pain lasting for at least three months; (2) at least 11 positive tender points bilaterally and above and below the waist; and (3) evidence that other disorders that could cause the same symptoms were excluded. *Id*. at 5-7. Under SSR 12-2p, the ALJ evaluating the claimant's medical impairments must examine the person's longitudinal record. *Id*. at *17.

In *Rogers*, the court determined that the ALJ erred by not discussing the standard of diagnosis of fibromyalgia tender points or ruling out other conditions. *Rogers*, 486 F.3d at 244. In discussing this error, the *Rogers* court noted that claimant's medical history was replete with "references to observed tender points in the 'classic fibromyalgia distribution,'" his treating doctors "recorded ongoing complaints of intense pain and stiffness through [his] body, as well as fatigue," and his medical records "evidence[d] a process of diagnoses elimination." *Id*. The court also discussed the continuity, frequency and consistency of claimant's treatment through his medical records, and the records from his treating rheumatologist, specializing in these types of

8

conditions, "reflect[ed] that he continually tested for and [claimant] increasingly exhibited the medically-accpeted and recognized signs of fibromyalgia." *Id*. at 244-45.

In the instant case, the ALJ discussed the applicable diagnosis standard for fibromyalgia. D.E. 13-1 at 19. Unlike *Rogers* where the claimant's records were replete with references to observed tender points, the ALJ here noted that although Reavis's primary care notes "reflect an isolated generalized assessment of fibromyalgia" and notes from specialist Robert Hoskins indicate 14 of the 18 requisite tender points, "the longitudinal record fails to establish fibromyalgia as a medically determinable impairment." *Id*. Furthermore, Plaintiff's medical "records remain silent as to findings of [these tender points] bilaterally above and below the waist as well as documentation that digital palpation was performed with appropriate force of pounds and that other disorders that could cause the signs or symptoms were excluded." *Id*. Although Plaintiff's record indicates a history of pain, the ALJ noted the absence of "evidence of any specialist treatment with a rheumatologist or of any pain management or physical therapy treatment related to fibromyalgia." *Id*. Additionally, Plaintiff's treating physicians noted that she had "no limitations in her ability to sit, stand or walk." *Id*. at 23. Accordingly, the ALJ found that the medical evidence is inconsistent with Plaintiff's complaints. Given the nature of fibromyalgia and the fact that it is not automatically a disabling impairment, the ALJ accepted the Plaintiff's treating physician's notes and diagnosis, but failed to find that the symptoms of her impairment severely impacted her ability to work. *See Sarchet*, 78 F.3d at 305. The ALJ determined that the findings required under SSR 12-2p to establish fibromyalgia were not present. The determination that Plaintiff does not suffer from fibromyalgia as a severe impairment is supported by sufficient evidence. Notably, Plaintiff has not pointed to anything in the record establishing the requisite tender points both

9

bilaterally and above and below the waist. That is the gap Plaintiff contends in her next argument must have been filled by the ALJ.

Plaintiff next argues that the ALJ erred by not re-contacting her treating physicians for more information regarding the 14 requisite tender points indicating fibromyalgia. D.E. 17-1 at 12. Plaintiff claims that by acquiring additional information concerning diagnostic testing, the ALJ would have found the documented diagnosis of fibromyalgia as a severe impairment and would have resulted in a differently calculated RFC. *Id*. SSR 12-2p provides "[w]e will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation . . . .[including] re-contact[ing] the person's treating or other source[s] to see if the information we need is available." *Id*. at 10, 12.

"[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where . . .the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 n.3 (6th Cir. 2009). "The decision to recontact is driven by the inadequacy in the record." *Bailey v. Colvin*, No. 3:15-CV-00815, 2016 WL 4559972, at *8 (M.D. Tenn. Sept. 1, 2016) (citing 20 C.F.R. § 404.1520b(c); 416.920b(c)). "Thus if the record contains sufficient evidence, recontacting sources is unnecessary." *Bailey*, 2016 WL 4559972, at *8. The duty of the ALJ is to ensure that the evidence in the record "provides a sufficient basis for [her] decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 2004).

Here, the Plaintiff's medical records include detailed notes from her primary care physician as well as notes from an independent examiner who examined her twice for fibromyalgia diagnosis. Additionally, Plaintiff was evaluated by a podiatrist. Plaintiff's extensive medical records provide information on her symptoms and alleged fibromyalgia. The ALJ evaluated these

10

records and substantiated her findings as they relate to Plaintiff's complaints of fibromyalgia. Ultimately, after considering the entirety of evidence, the ALJ found that Plaintiff's longitudinal record failed to establish the necessary repeated references, testing, and diagnosis of fibromyalgia as a medical impairment. This is not a case of an "inadequate record." Instead, it concerns the quality of the findings in that record. Accordingly, the ALJ's decision is supported by sufficient evidence as there was an abundance of evidence and little inconsistency in the Plaintiff's medical records.[4]

> **2. The ALJ's determination that Plaintiff is disabled is supported by substantial evidence.**

Although Plaintiff argues that substantial evidence does not support the ALJ's determination, she fails to identify any particular finding or conclusion that she seeks to challenge, aside from the challenges discussed previously. Where a claimant has failed to specifically identify alleged error, the Sixth Circuit has:

> decline[d] to formulate arguments on [the claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in [his] brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation marks omitted).

---

[4] Plaintiff summarily contends that the ALJ's failure to obtain additional information resulted in erroneous deference to previous findings under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). Because it was not error to rely on the record without recontacting Plaintiff's treating physician, Plaintiff's argument under *Drummond* fails.

11

After reciting the legal standard applicable to the case, Plaintiff's argument consists of the following:

> When the record in this case is considered in its entirety, the combined effects of Ms. Reavis's physical and mental impairments, reflect that she could not perform a widge range of even sedentary work on a regular and sustained basis. . . . It is the contention of the Plaintiff under these standards of review, that there is not substantial evidence to support the denial of her application for social security benefits.

D.E. 17-1 at 13. Plaintiff states this conclusory argument without citation to the record or reference to specific parts of the ALJ's opinion that are being challenged. Thus, these challenges warrant "little discussion, as [Plaintiff] has made little effort to develop this argument in [her] brief on appeal, or to identify any specific aspects of the Commissioner's determination that lacks support in the record." *Hollon*, 447 F.3d at 490-91.

Notwithstanding the imprecise nature of Plaintiff's argument, as outlined above, a review of the evidence of record demonstrates that the ALJ's decision is supported by substantial evidence. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *see also Rogers*, 486 F.3d 241; *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). Having reviewed the entire record of this matter, the Court finds no error with the ALJ's assessment and analysis of the evidence of record or her determination that Plaintiff is not disabled as defined by the Act.

## IV.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)   Plaintiff's Motion for Summary Judgment (Doc. # 6) is hereby **denied**;

(2)   Defendant's Motion for Summary Judgment (Doc. # 7) is hereby **granted**; and

(3)   A judgment shall be entered concurrently with this opinion.

This the 7th of November, 2016.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge